J-S22037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES EDWARD BIBBS JR. | : | |
| | : | |
| Appellant | : | No. 1452 WDA 2023 |

Appeal from the PCRA Order Entered November 16, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000633-2020

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: August 20, 2024**

Charles Edward Bibbs Jr., Appellant herein, appeals from the post-conviction court's order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

This Court summarized the facts and procedural history of Appellant's case in deciding his direct appeal, as follows:

> In October 2019, Bibbs and a co-conspirator, Douglas House, allegedly burglarized a home and took, among other items, a gun. In December 2019, House identified Bibbs to police as one of the burglars, and police obtained a warrant for Bibbs'[] arrest for the burglary.  On January 2, 2020, Sergeant Steven DeLuca of the Erie Police Department stopped Bibbs in a car and arrested him on the burglary warrant.  During a search pursuant to arrest, Sergeant DeLuca recovered the gun stolen in the burglary case from Bibbs.
>
> The Commonwealth separately charged Bibbs at docket 556 of 2020 for the October 2019 burglary ("the burglary case"), and at docket 633 of 2020 with persons not to possess firearms, firearms

not to be carried without a license, and receiving stolen property ("RSP") for possessing the gun on January 2, 2020 ("the firearms case"). In an apparent attempt to preempt the possible consolidation of the cases, Bibbs filed a "Motion to Sever" as part of his omnibus pretrial motions docketed in both cases. The Honorable David Ridge ("Judge Ridge"), the judge assigned to the burglary case, presided over the omnibus pre-trial motion. Judge Ridge ordered that the burglary and firearms cases be tried separately, having concluded that the cases lacked sufficient commonality or similarity. Judge Ridge expressly declined to rule on whether the evidence from the burglary case, in particular, House's statements implicating Bibbs in the burglary and the taking of the gun, would be admissible at trial of the firearms case.

Trial counsel then filed a motion *in limine* in the firearms case to preclude the admission of any evidence from the burglary case, including House's testimony, claiming that such evidence would permit the Commonwealth to convict Bibbs in the firearms case based on Pa.R.E. 404(b) prior bad acts evidence. The Honorable John Mead ("Judge Mead"), the trial judge assigned to the firearms case, denied the motion *in limine*.

At Bibbs'[] jury trial in the firearms case, House testified that he noticed a gun in a drawer, told Bibbs about the gun, and then turned his back. House continued, "[F]rom there … I don't know where the gun goes." House also testified that he later saw Bibbs with the gun. N.T., 10/14/20, at 47-48. Sergeant DeLuca testified that he recovered the gun when he arrested Bibbs on January 2, 2020.

Bibbs called several witnesses and testified on his own behalf. In relevant part, Bibbs testified that he found the gun outside of his girlfriend's apartment building on the morning of January 2, 2020, and that he was on his way to turn it over to the police when Sergeant DeLuca stopped him. *Id.* at 219-20. Bibbs also testified that he was not in Pennsylvania at the time of the burglary.[1] *Id.* at 215-26.

The jury found Bibbs guilty of persons not to possess firearms and firearms not to be carried without a license, but it deadlocked on the RSP charge. On December 8, 2020, the trial court sentenced Bibbs to an aggregate prison term of nine to eighteen years.

---

[1] Specifically, Bibbs claimed he was at a family reunion in Mississippi when the burglary occurred on October 29, 2019. *See id.* at 214.

> Judge Ridge and Judge Mead granted the Commonwealth's respective motions for orders of *nolle prosequi* of all charges in the burglary case, and the RSP charge in the firearms case. Trial counsel filed a motion to withdraw on December 15, 2020. That same day, the trial court granted the motion and granted Bibbs an additional thirty days to file post-sentence motions. On January 11, 2021, Bibbs filed *pro se* post-sentence motions. The trial court entered an order denying Bibbs'[] *pro se* post-sentence motions, and Bibbs, having retained … counsel, appealed.

**Commonwealth v. Bibbs**, 356 WDA 2021, unpublished memorandum at *1-4 (Pa. Super. filed Apr. 8, 2022) (footnotes and some citations to the record omitted). On appeal, this Court affirmed Bibbs' judgment of sentence. **See id.** He then filed a petition for allowance of appeal with our Supreme Court, which was denied on October 5, 2022. **See Commonwealth v. Bibbs**, 285 A.3d 885 (Pa. 2022).

On June 20, 2023, Bibbs filed a *pro se* PCRA petition.[2] Attorney William J. Hathaway, Esq., was appointed and filed a supplemental PCRA petition on July 19, 2023. On September 29, 2023, the court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Bibbs' petition without a hearing.[3] Attorney Hathaway responded to the Rule 907 notice with objections, but on November 16, 2023, the PCRA court issued an order dismissing Bibbs' petition.

Bibbs timely appealed, and he complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The

---

[2] Although Bibbs' *pro se* petition was entered on the docket, it is not contained in the certified record.

[3] Again, this document was docketed, but is not contained in the certified record.

PCRA court issued a Rule 1925(a) opinion on September 29, 2023. Herein, Bibbs states four issues for our review:

> A. Whether the [PCRA c]ourt committed legal error and abused its discretion in failing to grant PCRA relief in that [Bibbs] was afforded ineffective assistance of trial counsel for failure to call several alibi witnesses at time of trial including[,] most notably[,] Viola Bibbs, who possessed distinct and compelling evidence in support of [Bibbs'] alibi defense to the burglary charge?

> B. Whether the [PCRA c]ourt committed legal error and abused its discretion in failing to grant PCRA relief in that [Bibbs] was afforded ineffective assistance of counsel in failing to formally seek the provision of a justification jury instruction that would have provided a legal predicate for the jury to return verdicts of no criminal culpability arising from the possession of the weapon given the circumstances supporting justification of that possession relating to the intent to advance public safety exhibited by [Bibbs]?

> C. Whether the [PCRA c]ourt committed legal error and abused its discretion in failing to find that appellate counsel was ineffective in failing to assert a challenge that the trial [c]ourt abridged [Bibbs'] right to counsel of his choice when during the course of the jury trial, it was readily discerned that defense counsel had failed to fulfill Bibbs' expectations and right to present a complete defense in that defense counsel had failed to secure and present all of the alibi witnesses incorporated within the notice of alibi?

> D. Whether the [PCRA c]ourt committed legal error and abused its discretion in failing to grant PCRA relief in that the Commonwealth committed a **_Brady_**[4] violation in that there was no disclosure in discovery that an agreement was either in place or contemplated and intended relative to the cooperation of co-defendant, Douglas House[,] wherein at the time of his guilty plea and sentencing at docket number 554 of 2020?[]

Bibbs' Brief at 2-3.

_____

[4] **_Brady v. Maryland_**, 373 U.S. 83 (1963).

Initially, before addressing the merits of Bibbs' claims, we note that, on May 2, 2024, after Attorney Hathaway had filed the appellate brief in this case, Bibbs filed a *pro se* application for relief.  Therein, Bibbs asked that we remand his case for the appointment of new counsel under **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), wherein our Supreme Court held that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Id.** at 401.  Bibbs contended in his application for relief that Attorney Hathaway's brief is "severely undeveloped" and includes arguments that are "vague and not properly structured" or "supported with applicable legal citations."  Application for Relief, 5/2/24, at 2 (unnumbered).

This Court took no action on Bibbs' *pro se* application, instead deferring consideration of the petition to this merits panel.[5]  We now conclude that remand under **Bradley** is not warranted, as we disagree with Bibbs that Attorney Hathaway's brief is undeveloped and insufficient.  Attorney Hathaway

---

[5] Typically, any *pro se* submissions should be forwarded to PCRA counsel pursuant to **Commonwealth v. Jette**, 23 A.3d 1032, 1044 (Pa. 2011), *abrogated on other grounds by* **Bradley**, **supra** (holding that the proper response to a *pro se* pleading is to refer the pleading to counsel of record and take no action on the pleading unless counsel forwards a motion).  However, pursuant to **Bradley**, a PCRA petitioner may raise *pro se* claims of PCRA counsel's ineffectiveness. **See Bradley**, 261 A.3d at 401.  Moreover, pursuant to Pa.R.A.P. 121(g)(ii), a *pro se* request to change or remove counsel is an exception to the general rule regarding *pro se* filings by a represented party.  Therefore, we will overlook this Court's failure to follow the usual **Jette** procedure in the instant case.

provides a discussion of the legal requirements for demonstrating counsel's ineffectiveness and a ***Brady*** violation, ***see*** Appellant's Brief at 10-11, and then explains how Bibbs' four claims meet those requirements, ***see id.*** at 12-21. He supports his discussion with legal authority where applicable. Therefore, Bibbs has failed to demonstrate that Attorney Hathaway has acted ineffectively in briefing his issues, and remand for the appointment of new counsel is not appropriate. Therefore, we hereby deny Bibbs' application for relief.

In assessing the merits of Bibbs' issues, we are mindful that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Morales***, 701 A.2d 516, 520 (Pa. 1997) (citing ***Commonwealth v. Travaglia***, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he or she received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [***Commonwealth v.***] ***Colavita***, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing ***Strickland*** [***v. Washington***, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the ***Strickland***

performance and prejudice test into a three-part inquiry. *See* [*Commonwealth v.*] *Pierce*, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali*, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Simpson*, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *See Ali*, *supra*. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Colavita*, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King*, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" *Ali*, … 10 A.3d at 291 (quoting *Commonwealth v. Collins*, … 957 A.2d 237, 244 ([Pa.] 2008) (citing *Strickland*, 466 U.S. at 694….)).

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014).

In Bibbs' first issue, he contends that his trial counsel was ineffective for failing to present three alibi witnesses who would testify that Bibbs was at a family reunion in Mississippi at the time of the burglary in which House claimed Bibbs participated.

To prove that trial counsel provided ineffective assistance for failing to call a witness, a petitioner must demonstrate:

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the

> testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Brown***, 196 A.3d 130, 167 (Pa. 2018) (citation omitted).

Here, Bibbs has failed to satisfy the fifth prong. First, Bibbs recognizes that "[d]efense counsel presented evidence in support of the alibi defense," including two witnesses, Callasia Kinnard and IdeMaine Bibbs. Bibbs' Brief at 12. Bibbs argues, however, that trial counsel should have also called other witnesses, namely, Viola Bibbs, who "was the host of the family reunion … and … had pictures and videos to substantiate" Bibbs' presence at the gathering. ***Id.*** Bibbs insists that Viola's testimony would not have been merely cumulative, but "would have been distinct in quality and character from the other alibi witnesses" because she "was the host of the reunion and purportedly had photographs and video of the event establishing [Bibbs'] presence." ***Id.*** at 13. He also explains that, although all charges related to the burglary were ultimately *nol prossed*, he was still prejudiced by the absence of Viola's testimony because his "involvement in the burglary had a direct nexus and relevance as to the origins of how he came into possession of the firearm relating to the criminal charges of which he was convicted." ***Id.*** In other words, Bibbs avers that had the jury heard Viola's testimony, it would have bolstered the credibility of his alibi for the burglary, and likewise bolstered the credibility of his claim "that he had merely found the gun on the street" and possessed it only to turn it over to the police. ***Id.*** at 14. Thus, Bibbs claims he was prejudiced by counsel's failure to call Viola to the stand.

We disagree. Initially, even accepting that Viola's testimony would be relevant to the credibility of Bibbs' innocent explanation for his possession of the gun, it clearly would have been cumulative of the other alibi testimony and evidence that was offered at trial. For instance, Callasia Kinnard testified that Bibbs was her boyfriend at the time of the burglary (and at time of trial), and that from October 25 to 30, 2019, the two had been in Mississippi together. N.T. Trial, 10/14/20, at 168. Callasia was also able to authenticate a photograph, which was entered into evidence, that was taken at 1:21 p.m. on October 29, 2019, the day of the burglary. *Id.* at 172. That photograph showed Callasia, Bibbs, and Viola Bibbs in front of Viola's house in Mississippi. *Id.* at 171-72. Additionally, two other photographs were entered into evidence during Callasia's testimony, both of which showed Appellant in Mississippi on October 26, 2019, and October 28, 2019. *Id.* at 172-74. Moreover, Bibbs' brother, IdeMaine Bibbs, also testified that he and Bibbs were together in Mississippi from October 25 to 30, 2019. *Id.* at 200. When shown the pictures admitted during Callasia's testimony, IdeMaine confirmed that they depicted Bibbs in Mississippi on the dates of October 26, 28, and 29, 2019.

Given this alibi testimony and photographic evidence, Appellant has not established that Viola Bibbs' testimony would not have been merely cumulative. Therefore, he has not demonstrated that the omission of her testimony was so prejudicial as to have denied him a fair trial.

In Bibbs' second issue, he maintains his trial counsel was ineffective for failing to request a jury charge regarding the affirmative defense of justification pursuant to 18 Pa.C.S. § 503, which is defined as follows:

**(a) General rule.--**Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

18 Pa.C.S. § 503(a). According to Bibbs, a justification jury charge was warranted because he "offered a wholly innocuous basis as to why he was in possession of the firearm[,] in that he was only seeking to be a responsible citizen and remove the threat to any other person[,] including most notably any children that would be passing the area given the proximity of [a] school." Bibbs' Brief at 14. Bibbs insists that his "testimony and rationale for being in possession of the firearm conformed with the elements of legal justification." *Id.*

No relief is due. This Court has explained that,

[i]n order to be entitled to an instruction on justification by necessity as a defense to a crime charged, [the a]ppellant must offer evidence to show:

(1) that (he) was faced with a clear and imminent harm, not one which is debatable or speculative;

- 10 -

(2) that (he) could reasonably expect that (his) actions would be effective in avoiding this greater harm;

(3) that there is no legal alternative which will be effective in abating the harm; and

(4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

*Commonwealth v. Billings*, 793 A.2d 914, 916 (Pa. Super. 2002) (citation omitted).

Here, the PCRA court concluded that Bibbs' trial testimony that he found the gun, took possession of it to protect a child from finding it, and possessed it solely for the purpose of turning it over to police, did not meet the elements of a justification defense. The court reasoned that "[t]he harm [Bibbs] alleged to exist, that a child might find the firearm, is speculative. Moreover, [Bibbs] had other legal alternatives to taking the firearm, such as contacting the authorities for assistance." PCRA Court Opinion (PCO), 9/29/3, at 5.

We discern no error or abuse of discretion in the court's decision. Bibbs did not say that he actually saw a child near the gun; thus, he did not prove there was a "clear and imminent harm" that was not "debatable or speculative[.]" *Billings*, *supra*. Additionally, Bibbs – who should have reasonably known he was not permitted to possess a firearm based on his past conviction(s), and who had to know that he had no license to possess a firearm – could have avoided the danger he perceived by simply calling the police to report the gun, rather than taking possession of it. Accordingly, Bibbs has not demonstrated that the requirements of legal justification were

- 11 -

met, and counsel did not act ineffectively by not requesting a jury instruction on that defense.

Next, Bibbs argues that his appellate counsel was ineffective for not claiming on appeal that Bibbs was deprived of "his fundamental right to counsel." Bibbs' Brief at 17. Bibbs explains that, during trial, he "expressly sought the opportunity to secure other counsel of his choosing" when he realized that his privately-retained attorney "had not secured all of his alibi witnesses[,]" including Viola Bibbs. *Id.* According to Bibbs, the court "admonished [him,]" "indicated it was too late to switch counsel[,]" "pronounced that … the trial would proceed irrespective of the concerns then voiced by Bibbs[,]" and stated that Bibbs "could appeal that decision if the [c]ourt was wrong in its judgment." *Id.* at 17, 18. Bibbs stresses that, "[d]espite this evidence of record and the actual cue expressed by the trial [c]ourt as to expecting and countenancing an appeal of [its decision] as to counsel, appellate counsel failed to discern and assert the abrogation of the right to counsel as an appellate claim on direct appeal to the detriment of [Bibbs]." *Id.* at 18.

Again, Bibbs' ineffectiveness claim is meritless. Bibbs indicated at trial that he was unhappy with his counsel's decision to only call Callasia Kinnard and IdeMaine Bibbs, and not Viola Bibbs. For the reasons stated *supra*, counsel did not act ineffectively in this regard. Thus, Bibbs has not demonstrated that he was deprived of his right to effective representation, or that the trial court erred or abused its discretion by not allowing him to delay

- 12 -

the trial in order to retain a different attorney. Consequently, Bibbs has also failed to prove that his appellate counsel acted ineffectively by not asserting this meritless claim. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1210 (Pa. 2006) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.") (citation omitted).

Lastly, Bibbs argues that the Commonwealth committed prosecutorial misconduct and violated *Brady* by failing to disclose a favorable plea agreement offered to Douglas House in exchange for his cooperation and testimony against Bibbs. Our Supreme Court

> has held that, to establish a *Brady* violation, a defendant has the burden to prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued.

*Commonwealth v. Bagnall*, 235 A.3d 1075, 1086 (Pa. 2020) (citations omitted).

Here, Bibbs claims that House got favorable treatment in exchange for his cooperation and testimony against Appellant. For instance, Bibbs claims that on February 4, 2021, House "was afforded a sweetheart deal consisting of a plea agreement whereby he pled guilty to … a misdemeanor of the first degree in conjunction with a sentencing recommendation of 2 years['] probation." Bibbs' Brief at 19. Bibbs also contends that House gave several statements to police that did not implicate Bibbs, but after he gave a "statement to the police on December 30, 2019[,] implicating Bibbs[,] …

House was released from prison after a wholesale reduction in his bond status to an unsecured bond." *Id.* Bibbs avers that, notwithstanding this benefit in his bond status, and House's alleged plea deal in exchange for his testimony, "House disclaimed any motive to secure any beneficial treatment or that he was offered anything in the nature of a benefit from the Commonwealth." *Id.*

Additionally, Bibbs stresses that:

[T]he Commonwealth was dutybound and had a continuing obligation to disclose as *Brady* materials any formal plea offers or the intention to afford a plea offer in deference and response to House's cooperation in the instant case. Further, the Commonwealth was mandated to disclose any efforts on their part to alter House's bond status on December 31, 2019[,] a mere one day after his statement. Irrespective of House's dissembling at trial[,] *see*[] [N.T.], 10/14/20[, at] 84-85, 108-[]09, the fact that he was incarcerated pending trial without any prospect of release and then suddenly he [was] released on unsecured bond constitutes a material benefit. In this instance, the Commonwealth possessed an absolute duty to include in discovery that provision of a benefit and also any formal agreement or intention to formalize favorable plea terms which ultimately were afforded in the nature of an amended charge and a sentencing recommendation of 2 years probation[.] *See*[] [PCO at] 8 [(]in which House's counsel Attorney Hackwelder recites that House was vital in the process of the conviction of Bibbs and then purposely seeks not to go into detail, but then recites that there is an agreement for a sentencing recommendation of 2 years probation. Then, ADA Horton readily accedes to that recommendation, which the [c]ourt then imposed[).] This sentencing record of co-defendant House conclusively reveals that there was a definitive agreement in place in response to House's cooperation in implicating Bibbs and this reeks of a quid pro quo situation. Nonetheless, during trial of this case, the Commonwealth stood by and actively participated in the charade of House['s] apprising the jury that he did not have any expectation of any benefit in exchange for his testimony when he knew this was untrue and the Commonwealth was in [a] position to know this was untrue[,] yet they continued to represent this absolute falsity.

Hence, the Commonwealth committed prosecutorial misconduct in failing to disclose this mandatory material in discovery and further in acquiescing in any failing to correct House's testimony at trial that he did not expect or seek out any beneficial treatment in exchange for his cooperation wherein the Commonwealth fully recognized and was cognizant that House's testimony was wholly disingenuous and arose to perjury. The fact that House's trial was repeatedly continued by the Commonwealth presents the circumstance that there was a concerted effort to delay the resolution of his case in an effort to conceal the underlying plea agreement that was brokered and thereby shield its terms from disclosure as a part of discovery as *Brady* material. The [c]ourt should deem that jeopardy has attached in this case and that the proper remedy is not a mere new trial, but the issuance of an arrest of judgment on behalf of [Bibbs].

Bibbs' Brief at 20-21 (internal brackets omitted).

After careful consideration, we again conclude that no relief is due.

Bibbs' counsel vigorously cross-examined House as follows:

[Defense Counsel:] Now, in regards to the case that you have, have you had any sort of deal or plea agreement with the Commonwealth in return for your testimony, sir?

[House:] No sir.

[Defense Counsel:] Are you hoping to benefit by testifying here today in your case?

[House:] No sir.

[Defense Counsel:] You're not hoping to benefit at all, Mr. House?

[House:] Nope.

[Defense Counsel:] Well, let's talk a little bit about that. When you were first arrested in October -- excuse me, November, your bond was set at $75,000 straight cash bond; correct?

[House:] Correct.

[Defense Counsel:] That would mean that you have to raise $75,000 or pay a bail bondsman their fee to post $75,000; correct?

[House:] Correct.

[Defense Counsel:] But then you'd agree with me you made a statement on the 30th of December 2019 and your bond was then reduced on the 31st of December 2019 to $75,000 unsecured; correct, sir?

[House:] Correct.

[Defense Counsel:] And unsecured meaning you did not have to put up any sort of cash or hire or retain a bail bondsman to put up money; correct?

[House:] Correct.

[Defense Counsel:] So you'd agree, sir, that when you changed your statement on the 30th of December, you were released the next day from jail when you had an unsecured bond; correct, sir?

[House:] Correct.

[Defense Counsel:] So you would have been released from jail on the 31st of December; correct, sir?

[House:] Correct.

[Defense Counsel:] So you would agree with me that you got a benefit for changing your story; correct, sir?

[House:] I did not. I wasn't aiming to get a reduced bond or being let out on an unsecured bond. I mainly came forth to explain the whole story, my part of the robbery.

[Defense Counsel:] So what you're saying here is that you were doing your civic duty then by coming forward on the 30th of December and changing your story; correct?

[House:] Being honest, yes.

***

[Defense Counsel:] And -- well, when we talk about your case, it has been continued several times; correct, sir?

[House:] Yes.

- 16 -

[Defense Counsel:] All right. And currently, let's see. Of course we had -- we did have coronavirus, but your case was first set to go in August of 2020, for that trial term; correct, sir?

[House:] Sounds correct, yes.

[Defense Counsel:] And it was continued?

[House:] Yes.

[Defense Counsel:] Then your case was scheduled for this trial term, October 2020, and it was continued again; correct, sir?

[House:] Yes.

[Defense Counsel:] And now you're scheduled for the January 2021 trial term; correct, sir?

[House:] Correct.

[Defense Counsel:] Haven't been any conversations then with [the] Commonwealth that we will take a look at your situation once you have testified?

[House:] No.

[Defense Counsel:] And you're not counting on receiving some sort of a benefit because you are testifying here today, sir?

[House:] No sir.

[Defense Counsel:] But you would agree that having your bond reduced after making the second statement is a benefit in your case; correct, sir?

[House:] It is not.

\*\*\*

[Defense Counsel:] Has there been any discussion about charges being dropped in your case?

[House:] No.

[Defense Counsel:] So what you're telling the court here today is you are testifying with no thought of receiving any sort of benefit from your testimony in the serious criminal case that you are dealing with; correct, sir?

- 17 -

[House:] No.

[Defense Counsel:] Okay. That was -- you said you don't expect any benefit; correct?

[House:] Well, far as my drug and alcohol; but other than that, no.

[Defense Counsel:] What do you mean your drug and alcohol, sir?

[House:] Prior to the robbery I was heavy on drugs and alcohol. I've been looking for treatment outside of Erie County prison, but due to insurance I can't get any treatment.

[Defense Counsel:] But as to the charges you face that we discussed, and that would be Docket 554 of 2020, Erie County Court of Common Pleas, you're not hoping for or planning for any kind of benefit from your testimony here today?

[House:] Correct.

[Defense Counsel:] And you're also saying you came forward on the 30th of December because you wanted to do your civic duty and basically clear your conscious with the Erie police department?

[House:] My -- at that point I discussed with my lawyer and then my lawyer gave me counsel, legal advice counsel. And at that point I told my lawyer that I wanted to speak to the detective to give him the -- I mean I gave him half the truth then, but give him the whole truth when the second statement came.

N.T. Trial, 10/14/20, at 84-90.

Initially, this record clarifies that the Commonwealth did not suppress the fact that House's bond status was changed from secured to unsecured after he provided his December 31, 2019 statement to police. Rather, Bibbs' trial counsel knew this fact and thoroughly cross-examined House about it. Although House repeatedly denied that the change in his bond status was a benefit given to him in exchange for his statement implicating Bibbs, trial counsel's strenuous questioning clearly implied that it was. In any event, the

change in House's bond status was not willfully or inadvertently suppressed by the Commonwealth and therefore, no **Brady** violation was committed regarding that fact.

In terms of Bibbs' assertion that House had a plea agreement with the Commonwealth in exchange for his testimony against Bibbs, this claim is merely speculation. As the PCRA court explained:

> In [**Commonwealth v.**] **Reynolds**, [262 A.3d 544, 2021 WL 3673807 (Pa. Super. 2021) (unpublished memorandum),[6]] the Superior Court found no **Brady** violation existed where: ["]Reynolds failed to prove the first prong of the above-stated test, as he proffered no evidence whatsoever that the Commonwealth had, in fact, made promises to, or had any deals with [the at-issue witness] at the time of Reynolds' trial. Rather, Reynolds merely surmises as much based on the fact that [the witness] received a more lenient sentence to a lesser charge within a short time after she testified against Reynolds. This alone is insufficient to prove a **Brady** violation.["] [**Id.**] at *[4 (]citing **Commonwealth v. Morales**, 701 A.2d 516, 522-[]23 (Pa. 1997) (declining to find a **Brady** violation based on alleged plea deal with witness where [the] appellant offered nothing besides mere conjecture that such an arrangement existed)[)].
>
> [Here, Bibbs] claims that at the time of Douglas House's plea and sentencing, "the Commonwealth recited that as a part of the plea agreement and in recognition of his cooperation involving Bibbs that [a] sentencing recommendation of probation was being made." Supp. Pet[., 7/19/23, at] 5. This claim is belied by the record.
>
> At the time of Douglas House's plea and sentencing[,] his counsel stated:

---

[6] Pursuant to Pennsylvania Rule of Appellate Procedure 126, unpublished, non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. Pa.R.A.P. 126(b).

> MR. HACKWELDER: Judge, this was a co-defendant case. Without getting into detail, [House] was vital in that process, Judge. So that's why there's an agreement to this charge and to the two years probation, so I'll leave it at that, Judge. Thank you.

*House Tr.* pp 8-9.

The Assistant District Attorney stated:

> MS. HORTON: Thank you, Your Honor. [House's] prior record, he does have some felonies as a juvenile. They're theft, receiving stolen property, and unauthorized use as well as an adult, receiving property as a misdemeanor of the second degree. Two years probation recommendation is recommended. *Id.*

> As in *Reynolds*, [Bibbs] merely surmises that an agreement existed at the time of … House's testimony based on the fact that … House received a more lenient sentence to a lesser charge within a short time after he testified against [Bibbs]. This alone is insufficient to prove a *Brady* violation. Thus, [Bibbs'] claim of a *Brady* violation is meritless.

PCO at 8-9.

Given the record before us, we discern no error or abuse of discretion in the PCRA court's decision. House repeatedly and fervently denied that he had any agreement with the Commonwealth, or any hope for favorable treatment, in exchange for his testimony. The fact that the Commonwealth ultimately cited House's cooperation against Bibbs, and recommended a lenient sentence because of it, does not, in and of itself, establish that the Commonwealth promised House anything **before** he testified against Bibbs, or that it even gave him any reason to hope for a benefit in exchange for his testimony. Bibbs' speculation is not sufficient to establish a **Brady** violation. Accordingly, no relief is due.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/20/2024